**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JERRINE HANNAH,<br><br>Defendant. | ) | CASE NO. 1:23-cr-249<br><br>CHIEF JUDGE SARA LIOI<br><br>MEMORANDUM OPINION AND ORDER |

*Pro se* defendant Jerrine Hannah ("Hannah") moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 40 (Motion).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 43 (Response)), and Hannah has filed a document styled, "Motion to Resist et al[,]" which the Court construes as a reply. (Doc. No. 45 (Reply).) For the reasons set forth below, the motion to vacate is denied.

## I. BACKGROUND

On May 3, 2023, an indictment issued charging Hannah with four counts of interference with commerce by robbery ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951(a), and three counts of using, carrying, and/or brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("§ 924(c)"). (Doc. No. 1 (Indictment).) The charges related to four separate Burger King restaurants Hannah robbed over the course of several months in late 2022 and early 2023. (*See id.*)

On January 5, 2024, with the benefit of a plea agreement, Hannah entered a guilty plea to the four counts of Hobbs Act robbery (counts 1, 3, 4, and 6) and two of the three counts of brandishing a firearm during a violent crime (counts 2 and 5). (Minutes of Proceedings [non-document], 1/5/2024; *see* Doc. No. 21 (Plea Agreement).) In the plea agreement, the parties stipulated to a combined adjusted offense level of 30 before any reduction for acceptance of responsibility. (Doc. No. 21, at 5[1] ¶ 17.) The parties' agreed stipulated calculation included an increase under U.S.S.G. § 2B3.1(b)(4)(B), which provides for a two-level increase "if any person's freedom of movement was restricted through physical contact or confinement." (*Id.*); *see* U.S.S.G.§ 2B3.1(b)(4)(B). Additionally, as set forth in the agreement, each § 924(c) conviction required a consecutive seven-year prison term. (*Id.*) As part of the plea agreement, the government agreed to dismiss the remaining § 924(c) charge, which would have carried with it an additional, mandatory seven-year custody term. (*Id.* at 3 ¶ 11; *see* Doc. No. 35 (Change of Plea Hearing Transcript), at 8.) For his part, Hannah agreed not to argue for a custody sentence of less than 228 months (19 years). (*Id.*; Doc. No. 21, at 5 ¶ 15.)

The plea agreement also contained a broad waiver provision restricting Hannah's appellate rights, including his right to take a direct appeal and a collateral attack of his sentence. With respect to the latter, the waiver provision generally precluded the filing of a "proceeding under 28 U.S.C. § 2255." (*Id.* 6–7 ¶ 20.) Carved out of the waiver was the right to appeal the following: "(a) any punishment in excess of the statutory maximum; or (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

Guidelines in accordance with the sentencing stipulations and computations in [the plea] agreement, using the Criminal History Category found applicable by the Court." (*Id.*) The waiver further provided that "[n]othing in [the waiver] shall act as a bar to [Hannah's] perfecting any legal remedies [he] may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct." (*Id.*)

Prior to sentencing, the Court ordered the preparation of a Presentence Investigation Report ("PSR"). (Doc. No. 24 (PSR).) The PSR, like the parties' plea agreement, calculated the combined adjusted offense level for counts the Hobbs Act robbery counts (counts 1, 3, 4, and 6) as 30. After deducting three levels for acceptance of responsibility, the total offense level for the Hobbs Act robbery counts (counts 1, 3, 4, and 6) was 27. (*Id.* at 3 ¶ 3; *see id.* 8–10 ¶¶ 26–54.) As reflected in the PSR, Hannah had a criminal history score of 10, which corresponded to a criminal history category of V. (*Id.* at 17 ¶¶ 82–83.) Based upon a total offense level of 27 and a criminal history category V, the advisory guidelines range for the Hobbs Act robbery counts (counts 1, 3, 4, and 6) was 120–150 months. (*Id.* at 26 ¶ 121.) As to the two § 924(c) counts (counts 2 and 5), the PSR further provided that a "term of 7 years as to each count is required to be imposed consecutively to any term of imprisonment." (*Id.*)

At sentencing, the Court adopted the PSR's guidelines calculation (which corresponded to the parties' calculation in the plea agreement) without objection. (Doc. No. 32, at 4–6.) Accordingly, the Court found the sentencing range to be 120–150 months on the Hobbs Act robbery counts (counts 1, 3, 4, and 6). (*Id.* at 6.) When two consecutive terms of 84 months were added for the § 924(c) counts (counts 2 and 5), the advisory guideline sentencing range became 288–318. (*Id.*) The Court sentenced Hannah to a low-end guidelines sentence of 120 months on

the Hobbs Act robbery counts (counts 1, 3, 4, and 6) and consecutive terms of 84 months on each of the two § 924(c) counts (counts 2 and 5), for a total aggregate custody term of 288 months. (*Id.* at 26; Doc. No. 26 (Judgment), at 2; *see* Minutes of Proceedings [non-document], 5/6/2024.) Following imposition of the sentence, the Court granted the government's motion to dismiss the remaining § 924(c) charge (count 7). (Doc. No. 32, at 30–31.)

Hannah took a direct appeal from the Court's judgment. (*See* Doc. No. 28 (Notice of Appeal).) There, he argued that the Court erred in applying the enhancement under U.S.S.G. § 2B3.1(b)(4)(B). (Doc. No. 39 (Sixth Circuit Order), at 2.) Based upon the waiver of appellate rights in the plea agreement, the Sixth Circuit granted the government's motion to dismiss the direct appeal. (*See id.* at 4.) In so ruling, the Sixth Circuit determined that this Court properly confirmed during its Rule 11 plea colloquy that Hannah understood the nature of the appellate rights he was waiving and that his guilty plea was "knowing and voluntary." (*Id.*)

The present motion to vacate followed. In his motion, Hannah raises three grounds for relief. In Ground One, he alleges that the two consecutive 84-month sentences for his § 924(c) convictions exposed him to unlawful stacking. (Doc. No. 40, at 4.) In Ground Two, he again challenges the Court's application of the enhancement in U.S.S.G. § 2B3.1(b)(4)(B). (*Id.* at 5.) In Ground Three, he maintains that he received ineffective assistance from his counsel at the plea stage. (*Id.* at 7.)

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*. (citations omitted).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *see also Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over pretrial proceedings and sentencing, the judge may rely on her recollections of those events. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge*, 431 U.S. at 74 n.4).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Hannah has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Hannah in support of the present motion are either barred by the valid waiver provision in the plea agreement, contradicted by the record, or are averred to in a perfunctory and conclusory manner, preventing further review by this Court.

## III. DISCUSSION

### A. Grounds One and Two are Waived

As an initial matter, Hannah is procedurally barred from pursuing his first two grounds for relief because he voluntarily waived this right pursuant to the plea agreement. The Sixth Circuit has consistently held that plea agreement waivers of the right to appeal, including the right to bring motions under 28 U.S.C. § 2255, are generally enforceable. *See Slusser v. United States*, 895 F.3d 437, 439 (6th Cir. 2018) (citation omitted); *Cox v. United States*, 695 F. App'x 851, 853 (6th Cir. 2017) (citation omitted). As long as the appeal waiver is made knowingly and voluntarily, courts will enforce the waiver. *See United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017); *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (similar); *Davila v. United States*, 258 F.3d

448, 451 (6th Cir. 2001) (similar).

Here, Hannah generally waived his right to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. (*See* Doc. No. 21, at 6–7 ¶ 20.) As is the Court's practice, the Court engaged Hannah in a Fed. R. Crim. P. 11 colloquy, wherein after placing Hannah under oath, the Court reviewed with him the plea agreement and the rights he was giving up by entering a guilty plea, including the rights he was giving up by means of the waiver provision, in order to insure that he understood those rights, intended to waive those rights, and further intended to change his plea to guilty. (Doc. No. 35 (Transcript of Guilty Plea Hearing), at 25–50.) Additionally, at that time, Hannah stated that he was not threatened, coerced into pleading guilty, or made any promises in exchange for his guilty plea. (*Id*. at 53–54.) Because Hannah tendered a knowing, intelligent, and voluntary guilty plea (as the Sixth Circuit previously determined on direct review (*see* Doc. No. 39, at 4)), the waiver provision in the plea agreement is enforceable and serves to bar any waived argument, including his first two grounds for relief. Accordingly, Grounds One and Two are barred.

Additionally, with respect to Ground One, the Court did not improperly "stack" the sentences for his two § 924(c) convictions. Before the First Step Act, defendants convicted under § 924(c) faced a sentence of 25 years consecutive to all other sentences for a second or subsequent sentence under § 924(c). The First Step Act amended the language in § 924(c) so that the 25-year consecutive sentence applies only when a defendant has a *final* conviction for an earlier § 924(c) count. *See United States v. Burton*, 802 F. App'x 896, 911–12 (6th Cir. 2020) (citation omitted). In other words, for someone like Hannah, who had two § 924(c) counts in the same indictment, the First Step Act lowered the sentence he potentially faced on the second count to seven years.

Hannah, who was sentenced after the passage of the First Step Act, permissibly received two consecutive sentences of seven years in accordance with the terms of his plea agreement.

As for Ground Two, Hannah's guidelines challenge to the application of U.S.S.G. § 2B3.1 is also not cognizable on habeas review. The Sixth Circuit, along with "every circuit to 'look[] at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.'" *Bullard v. United States*, 937 F.3d 654, 660–61 (6th Cir. 2019) (quoting *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018), and collecting cases). Accordingly, Hannah's claim that the Court misapplied § 2B3.1(b)(4)(B), in addition to being waived, cannot be reviewed on a motion to vacate.

The first two grounds do not entitle Hannah to relief under § 2255 and are denied.

**B. Ground Three (Ineffective Assistance of Counsel) is without Merit**

In Ground Three, Hannah claims that he received ineffective assistance from trial counsel because counsel: "failed to adequately investigate material evidence possessed by the government[,]" "did not elaborate the full details of the plea agreement that was used against him[,]" and "advised [him] that he would receive a 19[-]year sentence if he accepted the plea and did not proceed to trial." (Doc. No. 40, at 7.) As noted, the appellate waiver in the plea agreement specifically carved out an exception for claims of ineffective assistance of counsel (*see* Doc. No. 21, at 7 ¶ 20), and, therefore, this claim is properly before the Court.

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 255 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

When a defendant enters a guilty plea, his counsel must perform within "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S.

335, 344, 106 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). As noted, the same two-part standard for ineffectiveness announced in *Strickland* applies to representation during the guilty plea process. *See Hill*, 474 U.S. at 58–59. To show prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

While Hannah claims that his trial counsel failed to "elaborate" upon the details contained in the plea agreement, he is bound by his sworn representations to the Court's inquiries at the change of plea hearing establishing that quite the contrary is true. During the plea colloquy, Hannah represented to the Court that he had discussed the terms of the plea agreement, including possible sentences, with his attorney. (Doc. No. 35, at 9–10, 49.) He also confirmed that he been given adequate time to review the terms with his attorney and that he understood and agreed to the agreement's provisions. (*Id.* at 7–9, 17–18, 26, 49, 52.)[2] Moreover, he signed the agreement and initialed each page indicating his understanding of and agreement with its contents. (*See generally* Doc. No. 21.) The Court proceeded to confirm Hannah's understanding of the plea agreement by going through the document paragraph-by-paragraph. (*See* Doc. No. 35, at 27–52.) Hannah specifically affirmed that he understood the terms of the plea agreement. (*Id.* at 52–53.) Further, when questioned about the factual basis of the plea agreement, Hannah explicitly agreed that he engaged in the conduct therein and did so knowingly, voluntarily, and intentionally. (*Id.* at 49–50.)

The Court also explored with Hannah the penalties that would apply in his case, including

[2] In fact, the Court took a recess during the change of plea hearing to afford Hannah additional time to again discuss the plea agreement with his counsel and to review certain modifications that were recently made to the agreement. (*Id.* at 19.)

the nature of the penalties associated with his § 924(c) charges and the likely guidelines ranges for the Hobbs Act robbery charges. With respect to the § 924(c) charges, the Court explained that each charge would carry a mandatory 84-month (7-year) sentence that would be consecutive to each other and to any guidelines sentence for the Hobbs Act robbery charges. Hannah indicated that he understood these penalties. (*Id.* at 43–44.) The Court also reviewed the parties' agreement as to the recommendations for sentences. Relevant to the present motion, the Court explained that, under the terms of the agreement, Hannah would not be permitted to recommend a sentence below 228 months (19 years), while the government would recommend a within-guidelines sentence. (*Id.* at 36, 44.) Hannah advised the Court that he understood. (*Id.* at 37, 44.)

Throughout this colloquy, the Court repeatedly questioned Hannah whether he understood what he was agreeing to and provided him ample opportunity to confer with his counsel. (*See, e.g., id.* at 18, 49.) At the conclusion of the colloquy, and understanding the nature of the plea agreement and all of the rights he was forfeiting, Hannah indicated that it was his voluntary decision to change his plea to guilty. (*Id.* at 55.) In so do, Hannah confirmed that no one had coerced or threatened him, or promised him anything in exchange for his guilty plea, and that he was satisfied with the legal services and advice provided by his attorney. (*Id.* at 18–19, 53–54.)

Based on Hannah's sworn statements at the change of plea hearing, the Court concludes that Hannah was sufficiently informed by his counsel regarding the "details" of his plea agreement. *See United States v. Cervantes*, 132 F.3d 1106, 110 (5th Cir. 1998) (observing that a defendant cannot ordinarily refute their sworn testimony from their plea hearing when challenging the validity of their guilty plea (citations omitted)). For the same reasons, the Court also finds Hannah's argument that his counsel advised him that he would only receive a 19-year sentence if

he did not proceed to trial is belied by the record. (*See* Doc. No. 40, at 7.) Again, Hannah repeatedly testified that he had discussed the details of the plea agreement with counsel, including the likely penalties, and that he had sufficient time to have these conversations. Moreover, rather than set 19 years as the upper bounds of any possible sentence, the plea agreement Hannah signed (and admitted that he discussed with counsel) clearly provided that Hannah would be unable to advocate for a sentence of *less than 19 years.* (Doc. No. 21, at 5 ¶ 15.)

Additionally, Hannah's understanding that 19 years represented the very lowest sentence he could request, and that the government was free to seek a higher within-guidelines sentence, was confirmed during the plea colloquy. "When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (further citation omitted)); *see Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (approving of the observation that the "Sixth Circuit has consistently upheld the validity of the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice").

"[W]here the court has scrupulously followed the required [Rule 11] procedure, the defendant is bound by his statements in response to the Court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The Court scrupulously followed the Rule 11 procedure (as determined by the Sixth Circuit) and Hannah is bound by his sworn statements made in response to the Court's inquiries. Based on the record, Hannah cannot claim in good faith that he did not understand the penalties or possible sentences, nor that his plea was anything other than an

intelligent, knowing, and voluntary waiver of his constitutional rights.[3]

Because the record does not support a finding that Hannah received ineffective assistance from his trial counsel, Ground Three is without merit and must be denied.

## IV. CONCLUSION

For the foregoing reasons, Hannah's motion to vacate, set aside, or correct his sentence (Doc. No. 40) is denied. Further, for the same reasons, the Court concludes that "jurists of reason" would not find it "debatable whether the petition states a valid claim of the denial of a constitutional right" or that the Court's findings that some of his claims are alluded to in a perfunctory manner, thus precluding further review, or are otherwise "waived" by the plea agreement are "correct[.]" *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Additionally, the Court has detailed above why Hannah's grounds for relief are otherwise belied by the record such that "reasonable jurists" would not debate the Court's denial of his motion to vacate. *See Slack*, 529 U.S. at 484. Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue

[3] Finally, Hannah argues in conclusory fashion in his motion that his attorney "failed to adequately investigate material evidence possessed by the government[.]" (Doc. No. 40, at 7.) Such perfunctory treatment of a ground fails to state a viable claim under § 2255. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (citation omitted). In his reply, however, he seems to shift gears by suggesting that the government deliberately suppressed documentation relating to the firearms that were used in the robberies. (*See* Doc. No. 45, at 6.) To the extent that he is now attempting to raise a claim of prosecutorial misconduct, it cannot be raised for the first time in a reply brief. *United States v. Turek*, No. 5:11-cr-29, 2015 WL 5838479, at *6 (E.D. Ky. Oct. 6, 2015) ("It is well-established that a party, including a movant in a motion under § 2255, may not raise an argument for the first time in a reply brief." (quotation marks and citations omitted)). Moreover, because the plea agreement specifically carved out an exception allowing for appeals involving claims of prosecutorial misconduct, this claim should have been raised on direct appeal and is now waived. *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (holding because a motion to vacate is not a substitute for a direct appeal, claims that could have been raised on direct appeal, but were not, are waived (collecting cases)). Finally, Hannah's reply brief also seems to raise a sufficiency of the evidence claim. (*See* Doc. No. 45, at 9.) Even if he could bring such a new claim in his reply (which he cannot), such a claim would be procedurally barred by the terms of the plea agreement and by virtue of Hannah's decision to plead guilty. *See United States v. Studabaker*, 578 F.3d 423, 429 (6th Cir. 2009) (By entering a knowing and voluntary plea, a defendant waives his right to challenge the sufficiency of the evidence supporting his conviction).

a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: September 10, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**